FILED

2014 Feb-27  AM 08:58
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | |
|---|---|
| MAE MᶜNUTT HAMMAC, | ) |
| | ) |
| **Plaintiff** | ) |
| | ) |
| vs. | ) |
| | )   **Case No.  4:12-cv-03941-JHE** |
| CAROLYN W. COLVIN,[1] | ) |
| **Acting Commissioner,** | ) |
| **Social Security Administration,** | ) |
| | ) |
| **Defendant** | ) |

## MEMORANDUM OPINION

Plaintiff Mae McNutt Hammac ("Hammac") seeks review, pursuant to 42 U.S.C. § 405(g), § 205(g) of the Social Security Act, of a final decision of the Commissioner of the Social Security Administration ("Commissioner"), denying her application for Disability Insurance Benefits ("DIB") and Supplemental Security

---

[1]  Carolyn W. Colvin was named the Acting Commissioner on February 14, 2013.  See http://www.socialsecurity.gov/pressoffice/factsheets/colvin.htm ("On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of Social Security.") (last accessed on December 17, 2013).  Under 42 U.S.C. § 405(g), "[a]ny action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office."  Accordingly, pursuant to 42 U.S.C. § 405(g) and Rule 25(d) of the Federal Rules of Civil Procedure, the court has substituted Carolyn W. Colvin for Michael Astrue in the case caption above.

Income ("SSI").[2]   Hammac timely pursued and exhausted her administrative remedies.  The case is therefore ripe for review under 42 U.S.C. §§ 405(g).[3]  The undersigned has carefully considered the record and, for the reasons stated below, decision of the Commissioner is due to be AFFIRMED.

## FACTUAL AND PROCEDURAL HISTORY

Hammac was a 44-year-old female at the time of her hearing before the Administrative Law Judge ("ALJ") on April 14, 2011 (Tr. 32-75).  She has a limited education and is able to communicate in English. (Tr. 22).

Hammac filed an application for DIB and SSI on October 27, 2009, alleging an initial onset date of December 26, 2006.  (Tr. 76, 161-67 (DIB), 77, 168-72 (SSI)). The State Agency denied Hammac's applications, and Hammac requested a hearing before an ALJ.  (Tr. 109-10).  After a hearing on April 14, 2011, the ALJ denied Hammac's claim for benefits on May 11, 2011.  (Tr. 24).  Hammac sought review by the Appeals Council, but it declined her request on September 26, 2012.  (Tr. 1-4).

---

[2] In general, the legal standards applied are the same whether a claimant seeks DIB or SSI. However, separate, parallel statutes and regulations exist for DIB and SSI claims.  Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates.  The same applies to citations for statutes or regulations found in quoted court decisions.

[3] 42 U.S.C. § 1383(c)(3) renders the judicial review provisions of 42 U.S.C. § 405(g) fully applicable to claims for SSI.

On that date, the ALJ's decision became the final decision of the Commissioner. *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Hammac then initiated this action.

## STANDARD OF REVIEW

The court's review of the Commissioner's decision is narrowly circumscribed. The function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 91 S. Ct. 1420 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). This court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted). This court will determine the ALJ's decision is supported by substantial evidence if it finds "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* Substantial evidence is "more than a scintilla, but less than a preponderance." *Id.* Factual findings that are supported by substantial evidence must be upheld by the court. *Id.* The ALJ's legal conclusions, however, are reviewed *de novo*, "because no presumption of validity attaches to the [ALJ's] determination of the proper legal standards to be applied." *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). If the court finds an error in the ALJ's

application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining the proper legal analysis has been conducted, the ALJ's decision must be reversed.  *See Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

## STATUTORY AND REGULATORY FRAMEWORK

To qualify for disability benefits and establish entitlement for a period of disability, a claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder.[4]  The Regulations define "disabled" as the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  20 C.F.R. § 416.905(a).  To establish entitlement to disability benefits, a claimant must provide evidence of a physical or mental impairment which "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques."  20 C.F.R. § 404.1508.

---

[4]  The "Regulations" promulgated under the Act are listed in 20 C.F.R. Parts 400 to 499, revised April 1, 2013.

The Regulations provide a five-step process for determining whether a claimant is disabled.  20 C.F.R. § 416.920(a)(4)(i–v).  The Commissioner must determine in sequence:

(1)    whether the claimant is currently engaged in substantial gainful activity;

(2)    whether the claimant has a severe impairment;

(3)    whether the claimant's impairment meets or equals an impairment listed by the Secretary;

(4)    whether the claimant can perform his past work; and

(5)    whether the claimant is capable of performing any work in the national economy.

*See Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2010); *accord McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).  "Once the claimant has satisfied steps one and two, [she] will automatically be found disabled if [she] suffers from a listed impairment.  If the claimant does not have a listed impairment but cannot perform [her] work, the burden shifts to the Secretary to show that the claimant can perform some other job."  *Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993), *overruled in part on other grounds by Johnson v. Apfel*, 189 F.3d 561 (7th Cir. 1999); *accord Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995).  The Commissioner must further show that such work exists in the national economy in significant numbers. *Foote*, 67 F.3d at 1559.

FINDINGS OF THE ADMINISTRATIVE LAW JUDGE

At Step One, the ALJ found Hammac met the insured status requirements of the Social Security Act through June 30, 2010, and had not engaged in substantial gainful activity since December 26, 2006, the alleged onset date. (Tr. 12). At Step Two, the ALJ found Hammac had the following severe impairments: bilateral symmetrical medical compartment narrowing of the knees; degenerative joint disease of the knees, bilaterally; probable degenerative disc disease; sacralization of the fifth lumbar body; osteoarthritis; possible rheumatoid arthritis; chronic obstructive pulmonary disease; obstructive sleep apnea; obesity; tobacco abuse; ocular histoplasmosis; and blindness in the right eye. (*Id.*). At Step Three, the ALJ found Hammac does not have an impairment or a combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 15).

Before proceeding to Step Four, the ALJ determined Hammac's residual functioning capacity ("RFC"), which is the most a claimant can still do despite her impairments. *See* 20 C.F.R. § 404.1545(a)(1). The ALJ determined Hammac can occasionally lift and/or carry twenty pounds; she can frequently lift and/or carry ten pounds; she can stand and/or walk for two to three hours in an eight-hour workday; she can sit about six hours in an eight-hour workday; she can occasionally balance,

stoop, kneel, crouch, crawl and climb ramps and stairs; she cannot climb ladders, ropes or scaffolds; due to her field acuity, depth perception, accommodation and field of vision, she may have difficulty seeing very small objects, but she is able to avoid common hazards in the workplace; however, she must avoid all exposure to unprotected heights; and she requires the option to sit or stand at will. (Tr. 15).

At Step Four, the ALJ determined Hammac is unable to perform any past relevant work. (Tr. 22). At Step Five, the ALJ determined, based on Hammac's age, education, work experience, and RFC, jobs exist in significant numbers in the national economy Hammac can perform. (Tr. 23-24). Therefore, the ALJ denied Hammac's claim. (Tr. 24).

## ANALYSIS

This court is limited in its review of the Commissioner's decision in that the Commissioner's findings of fact must be reviewed with deference. *See Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990) (citing *Graham v. Bowen*, 790 F.2d 1572, 1574-75 (11th Cir. 1986)). In contrast to factual findings, the Commissioner's conclusions of law are subject to an "exacting examination" or *de novo* review. *See Martin*, 894 F.2d at 1529 (citing *Graham*, 790 F.2d at 1574-75) ("The Secretary's failure to apply the correct legal standards or to provide the reviewing court with sufficient basis for a determination that proper legal principles have been followed

mandates reversal.") (citations omitted). In particular, this court has a "responsibility to scrutinize the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding." *See Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) (citing *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980)).[5] However, the court "abstains from reweighing the evidence or substituting its own judgment for that of the [Commissioner]." *Id.* (citation omitted).

The court must review the Commissioner's decision and determine whether it is supported by substantial evidence and he applied the correct legal standards. *Wilson*, 284 F.3d at 1221. Hammac specifically challenges the Commissioner's decision on two grounds. Hammac contends the ALJ (1) did not give proper weight to the opinion provided by Dr. Flammang, Hammac's treating physician, (Doc. 10 at 7-10), and (2) improperly discredited Hammac's testimony based on her daily activities (Doc. 10 at 10-14).

## I.   The ALJ Articulated Good Cause for Rejecting Certain Opinions Provided by Dr. Flammang

Hammac contends the Commissioner's decision should be reversed because the ALJ failed to articulate good cause for rejecting certain opinions offered by one of her treating physicians, Dr. Flammang. (Doc. 10 at 7-10).

---

[5]   In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

A treating physician's testimony is entitled to "substantial or considerable weight unless 'good cause' is shown to the contrary." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)) (internal quotations omitted). "Good cause" exists for an ALJ to not give a treating physician's opinion substantial weight when the: "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004) (citing *Lewis*, 125 F.3d at 1440); *see also Edwards v. Sullivan*, 937 F.2d 580, 583-84 (11th Cir. 1991) (holding "good cause" existed where the opinion was contradicted by other notations in the physician's own record).

The court must also be aware that fact opinions on certain issues, such as whether a claimant is disabled, the claimant's RFC, and the application of vocational factors "are not medical opinions, . . . but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability." 20 C.F.R. §§ 404.1527(e), 416.927(d). The court is interested in a doctor's evaluation of the claimant's "condition and the medical consequences therefore, not their opinions of the legal consequences of his [or her] condition." *Lewis*, 125 F.3d at 1440. Such

statements by a physician are relevant to the ALJ's findings, but they are not determinative, as it is the ALJ who bears the responsibility for assessing a claimant's RFC. *See* 20 C.F.R. § 404.1546(c).

On April 9, 2007, Dr. Flammang wrote a "to whom it may concern" letter opining "Hammac suffers from arthritis making it difficult for her to climb stairs. Please provide her access to a street level apartment with as few stairs as possible. Thank you for your cooperation with this disabled patient." (Tr. 415). Dr. Flammang subsequently wrote a letter to the Division of Disability Determination Services ("DDS") on May 17, 2007, opining:

> Hammac suffers from arthritis of the knees, chronic back pain, obesity, and central visual field blindness. She has been diagnosed as legally blind by her ophthalmologist, Dr. Sung. Due to her legal blindness, I do not feel that she is able to perform work-related activities on a sustained basis. Her arthritis of her knees does prohibit her from walking or standing for prolonged periods of time as well. I consider this disability to be permanent.

(Tr. 670).

The ALJ accepted and gave significant weight to Dr. Flammang's opinion that Hammac's poor vision and arthritis limit her ability to climb stairs and walk or stand for prolonged periods of time and accounted for this in determining her RFC. (Tr. 18). The ALJ, however, rejected other aspects of Dr. Flammang's opinions.

Specifically, the ALJ rejected Dr. Flammang's opinion "to the extent that it states that the claimant is disabled" and expressly indicated his reasoning. (*Id.*). The ALJ did not err by not affording this opinion controlling weight. He correctly explained "disability" is an issue for which final responsibility is reserved to the Commissioner. (*Id.*); *see* 20 C.F.R. § 404.1527(d); Social Security Ruling (SSR) 96-5p, 1996 WL 374183 at *2 (1996). As to Dr. Flammang's opinion that Hammac is unable to perform work-related activities on a sustained basis due to blindness, the ALJ found this opinion unsupported by and inconsistent with the record as a whole.[6] (Tr. 18). To the contrary, the record indicates Hammac's treating ophthalmologist, Dr. Charles Sung, opined on February 15, 2007, Hammac was last seen on January 4, 2007, and she had 20/20 vision with correction in her left eye and never returned for a follow-up exam.[7] (Tr. 634). Additionally, the ALJ considered that Hammac's right eye

---

[6] Hammac mischaracterizes Dr. Flammang's opinion as saying her inability to perform work-related activities was due to impairments other than blindness. (Doc. 10 at 8-9). In the May 15, 2007, letter, Dr. Flammang stated "Hammac suffers from arthritis of the knees, chronic back pain, obesity, and central visual field blindness." (Tr. 670). However, she limited herself, stating, "[d]ue to her legal blindness, I do not feel she is able to perform work-related activities on a sustained basis." (*Id.*).

[7] Additionally, Dr. Flammang is a primary care physician, not an eye doctor. The regulations permit the ALJ to consider a medical source's specialization when weighing a medical opinion. *See* C.F.R. §§ 404.1527(c)(5), 416.927(c)(5) ("We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist."). The ALJ considered Dr. Sung, Hammac's treating ophthalmologist, did not specify any work-related limitations as a result of her vision problems. (Tr. 18, 390-93, 634).

blindness was present in 2005 when she was still working and Hammac's statement she told at least one doctor she quit work because of shortness of breath, not vision impairment.  (Tr. 18, 198, 603).  The ALJ's determination that Hammac's right eye blindness does not prohibit her from performing work-related activities is supported by the record, and, accordingly, there is good cause to discount Dr. Flammang's opinion to the contrary.  *See Syrock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985). While Hammac may disagree with the ALJ's determination, she fails to show the ALJ did not provide "good cause" in accordance with the proper legal standards or how it is not supported by substantial evidence.

Hammac also contends the ALJ should have re-contacted Dr. Flammang for clarification if he thought her opinions were incomplete or inadequate.  (Doc. 10 at 9-10).  This argument is without merit.  Hammac has not demonstrated there was a need for additional information or clarification, and she does not argue the record was insufficient for the ALJ to make his decision.  (Doc. 10 at 9-10); *see* SSR 96-5p; 20 C.F.R. §§ 404.1512(e), 416.912(e).  Dr. Flammang wrote a letter to the Division of Disability Services in 2007 explaining she thought it best any questions regarding Hammac's ability to perform work-related activities be addressed by her ophthalmologist.  (Tr. 661).  There was nothing further for the ALJ to ask Dr. Flammang.

## II.  The ALJ Properly Considered Hammac's Testimony Regarding Her Daily Activities

Hammac challenges the ALJ's credibility findings to the extent he considered and placed, what she contends is, "significant emphasis" on her daily activities. (Doc. 10 at 10).  The regulations and Eleventh Circuit precedent permit an ALJ to consider daily activities when discrediting a claimant's testimony.  20 C.F.R. §§ 404.1529(c)(3)(i), 416.929(c)(3)(i); *Dyer v. Barnhart*, 295 F.2d 1206, 1212 (11th Cir. 2005); *see also Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002) (holding an ALJ is permitted to discredit a claimant's subjective testimony of pain and other symptoms if he articulates explicit and adequate reasons for doing so).

Here, the ALJ considered Hammac's daily activities of daily living and concluded Hammac's subjective complaints concerning the intensity, persistence, and limiting effects of her impairments less than credible.  (Tr. 17).  The ALJ noted that at the hearing Hammac testified she lives with and takes care of her disabled grandson, but does not do any laundry, go to church, or go fishing, and seldom goes shopping.  (Tr. 16).  The ALJ also noted Hammac testified her only hobby is the computer, which she stays on fifteen to twenty minutes at a time, and she drives independently, but uses oxygen.  (*Id.*).  Additionally, he pointed to medical records and forms Hammac completed in connection with her application in which she

reported the following daily activities:  independently caring for her disabled grandson, preparing sandwiches, performing household chores, including cleaning, doing laundry, making household repairs, ironing, mowing, etc., at a rate of one or two rooms per day, walking outside, driving independently, riding a bicycle, shopping in stores for food, paying bills, counting change, handling a savings account, using a checkbook/money order, and chatting on the computer. (Tr. 16, 269-72).  In reaching his conclusion, the ALJ specifically pointed to Hammac's ability to care for a disabled child at home and noted this could be quite demanding, both physically and emotionally.  (Tr. 16-17).  He also specifically pointed to Hammac's conflicting reports as to her ability to perform household chores.  (Tr. 17).

   The ALJ properly considered Hammac's daily activities as part of his assessment of her credibility and adequately expressed his reasons for finding Hammac's subjective complaints less than credible.  The ALJ concluded although Hammac's impairments could reasonably be expected to cause some of the alleged pain and dysfunction, her statements concerning the intensity, persistence, and limiting effects of these symptoms were less than credible.  (Tr. 17).  In addition to her activities of daily living, the ALJ relied on the inconsistency between Hammac's allegations of disability and her medical history.  (*Id.*).  The ALJ noted significant gaps in Hammac's medical history and noted routine and/or conservative treatment

when she received treatment. (*Id.*). Additionally, the ALJ noted Hammac never sought treatment from a pulmonologist or a rheumatologist, but all treatment, other than for vision and sleep problems, had been rendered by a general practitioner or a nurse practitioner. (*Id.*). The ALJ also considered Hammac failed to follow-up on multiple recommendations by multiple doctors, which suggests her symptoms may not have been as serious as alleged. (*Id.*).

An ALJ is permitted to discredit a claimant's subjective testimony of pain and other symptoms if he articulates explicit and adequate reasons for doing so. *Wilson*, 284 F.3d at 1225; *see also* SSR 96-7p, 1996 WL 374186 (1996) ("[T]he adjudicator must carefully consider the individual's statements about symptoms with the rest of the relevant evidence in the case record in reaching a conclusion about the credibility of the individual's statements."). This is precisely what the ALJ did here. The court may not reweigh the evidence, but must give substantial deference to the Commissioner's findings. *See Wilson*, 284 F.3d at 1221. Accordingly, the ALJ's consideration of Hammac's activities of daily living in evaluating Hammac's credibility was proper.

## CONCLUSION

The ALJ applied the proper legal standards, and there is substantial evidence to support his findings. Plaintiff fails to point to a deficiency in either regard. The

court has scrutinized the entire record and determined the ALJ's decision is reasonable and supported by substantial evidence.  Accordingly, the decision of the Commissioner is due to be AFFIRMED and this action DISMISSED.

A separate order will be entered.

DONE this 27th day of February, 2014.

HARWELL G. DAVIS, III
UNITED STATES MAGISTRATE JUDGE